[No. 1554-3.    Division Three.    June 29, 1976.]

LAWRENCE A. FISHER, ET AL, *Appellants*, v. WORLD-WIDE TROPHY OUTFITTERS, *Respondent*.

*William J. Powell*, for appellants.

*Joseph J. Rekofke* and *Winston, Cashatt, Repsold, Mc-Nichols, Connelly & Driscoll*, for respondent.

*Slade Gorton, Attorney General*, and *John E. Lamp, Assistant*, amici curiae.

GREEN, J.—The sole issue presented is whether the trial court erred in entering conclusion of law No. 4:

> The Consumer Protection Act, RCW 19.86 does not apply in this type of case and, therefore, the plaintiffs' claim against the defendants under the Act for damages, exemplary damages and attorney's fees, is denied.

Plaintiffs argue that the Consumer Protection Act applies and they should be awarded exemplary damages and attorney's fees. On the other hand, defendants contend that we cannot reach this issue because the record on appeal is insufficient to resolve it. Consequently, defendants' brief

fails to discuss the merits of the issue raised by plaintiffs. We turn first to defendants' contention.

The record before this court consists of the clerk's transcript containing, among other documents, the summons and complaint, the trial judge's memorandum opinion, the findings of fact and conclusions of law, and judgment. There is no statement of facts containing the testimonial portion of the proceedings; however, there is a certificate signed by the trial judge in which he states that he is certifying, as a statement of facts, the memorandum opinion and the 32 exhibits.

First, defendants contend that plaintiffs have not complied with CAROA 34:

(4) (Appeal on short record.) . . . If the appellant does not include in his statement of facts the complete record and all the proceedings and evidence in the cause, he shall serve and file with such proposed statement of facts a concise statement of the points on which he intends to rely on the appeal.

Inferentially, it is contended we should reject the appeal for this reason. We disagree. It is true there is no document denominated a "statement of points on appeal" served and filed in this proceeding. However, a "Notice Regarding Statement of Facts" was served and filed, which fulfills the purpose of CAROA 34(4). This document informed defendants that if they did not cross-appeal, plaintiffs would order only a limited record as designated in a praecipe, and would process the appeal

solely on the issue of whether the court erred in ruling that the Consumer Protection Act, RCW 19.86, doesn't apply.

This is precisely what the plaintiffs did. Thus, we find substantial compliance with CAROA 34(4).

Secondly, defendants argue that the challenged conclusion of law is really a finding of ultimate fact, and, therefore, the entire record is necessary to determine whether there is substantial evidence to support it. We disagree and find that the challenged conclusion is a conclusion of law, and not an ultimate fact. The determination

of whether a particular statute applies to a factual situation is a conclusion of law, and not a finding of fact. *Harrison v. Consolidated Holding Co.*, 200 Wash. 434, 438, 93 P.2d 729 (1939);[1] *see also* Black's Law Dictionary 362 (4th ed. 1951). Since no error has been assigned by either party to any of the findings of fact, they will be considered verities. CAROA 43. A statement of facts is required only when it is necessary to consider the question presented. *See State v. Womack*, 82 Wn.2d 382, 510 P.2d 1133 (1973); *Sweeney v. Sweeney*, 47 Wn.2d 169, 286 P.2d 719 (1955); *Riley v. Sturdevant*, 12 Wn. App. 808, 532 P.2d 640 (1975). Here, a statement of facts is not necessary because we are only presented with the question: Do the findings of fact entered by the court support its conclusion of law that the Consumer Protection Act does not apply? We answer in the negative and reverse.

The court's findings disclose the following facts: In the summer of 1973, as a consequence of advertisements appearing in a magazine, plaintiffs, residents of Illinois, contacted defendant, World-Wide Trophy Outfitters, Ltd., a Washington corporation located in Spokane, to arrange for a big game hunt in British Columbia during October 1973. Specifically, the court found:

> The plaintiffs had first become acquainted with WORLD-WIDE TROPHY OUTFITTERS, LTD. through a magazine advertisement appearing in Field and Stream (Exhibit No. 23) which contained a general statement likely to be interpreted by the reader to indicate it applied to every kind of hunt offered, that read:
> "WHY WASTE YOUR MONEY—GUARANTEED SHOTS".
> The article represented initial inducement for the plaintiffs to contact WORLDWIDE TROPHY OUTFITTERS, LTD.

(Finding of fact No. 4.) An examination of exhibit 23

---

[1] In *Harrison*, the record on appeal contained only the findings of fact and conclusion of law; there was no statement of facts. At page 438, the court said:

"Respondent contends, and the trial court agreed with him, that the action is governed by that portion of the statute of limitations . . . [and] is barred unless commenced within six years. As above set forth, the trial court made an express finding to the effect that this action was timely instituted within the period of the statute just quoted. This so-called finding is merely a conclusion of law."

shows that the ad pictured a sheep's head with long horns, fully curled, and appeared in several monthly issues of Field and Stream Magazine.[2] The negotiations for the hunt were conducted by mail and telephone. The exhibits contain letters and brochures transmitted to plaintiffs describing the details of the hunt. The trial court found that during these negotiations, World-Wide made the following representations to plaintiffs:

> It was represented that there was a 100% chance for each hunter to obtain a shot at a trophy moose; . . . a 100% chance for each hunter to obtain a shot at a trophy caribou; . . . a 50% chance for each hunter to obtain a shot at a grizzly bear; . . . the guide for the trip . . . KENNETH HOOKER, hunted mountain goat and that if the plaintiffs were in good physical condition the odds were most excellent of obtaining a goat; . . . the outfitter traveled and hunted by boat and all terrain vehicle; . . . a cook would be available for the preparation of food during the course of the twelve day hunt. These representations were made as an inducement for each of the plaintiffs to enter into a booking arrangement . . . for this . . . hunt.

It further found that each of the plaintiffs reasonably relied upon the representations (written and oral) made by World-Wide and, but for these representations, plaintiffs would not have booked the hunt. The result of the hunt was described in the following findings:

> Plaintiffs attended the hunting trip from October 12 to October 23 and the evidence shows that none of the facts contained in the representations set forth above were true with respect to the nature of the hunt. During the course of the hunt plaintiff, SANDRA FISHER, did shoot a moose, but the cape was spoiled and the only thing that was salvaged was a set of antlers. Also during the hunt, plaintiff DOMBECK shot a small caribou and plaintiff FISHER shot a lynx. These were the only animals taken during the course of the hunt and neither the moose nor the caribou were of trophy caliber.

(Finding of fact No. 6.) Viewing the representations in

---

[2]Exhibit 23 indicates the advertisement was in each issue during the months of November and December 1972, and January, February, and May 1973.

light of what happened during the hunt, the court found that the representations made by World-Wide "were false and misleading and were made with reckless disregard for the truth." It also found that while the evidence was insufficient to establish that the representations were deliberate and intentional, the evidence was sufficient to establish that "the representations were negligently made and . . . were based upon an incomplete investigation" by World-Wide. As to the advertisements, the court found:

> The advertisement contained in the Field and Stream Magazine which attracted the plaintiffs (Exhibit 23) had the *capacity to deceive.*
> The representations made by WORLDWIDE TROPHY OUTFITTERS, LTD., either in writing or orally, *actually deceived* the plaintiffs as to the true nature of the hunting trip.

(Italics ours.) Findings of fact Nos. 9, 10. Based essentially on these facts, the trial court awarded damages to plaintiffs upon their common-law claim for misrepresentation, but denied recovery under the Consumer Protection Act, RCW 19.86.

Plaintiffs' theory under the Consumer Protection Act is grounded in defendant's violation of RCW 19.86.020:

> Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

and the remedy provided in RCW 19.86.090:

> Any person who is injured in his business or property by a violation of RCW 19.86.020, . . . may bring a civil action in the superior court to enjoin further violations, to recover the actual damages sustained by him, or both, together with the costs of the suit, including a reasonable attorney's fee, and the court may in its discretion, increase the award of damages to an amount not to exceed three times the actual damages sustained: *Provided,* That such increased damage award . . . may not exceed one thousand dollars.

These provisions are to be liberally construed to serve the beneficial purposes of the act. RCW 19.86.920.[3]

██ Subsequent to the trial court's decision in the instant case, the Supreme Court, in *Lightfoot v. MacDonald*, 86 Wn.2d 331, 335-36, 544 P.2d 88 (1976), observed that the purpose of the act is to protect the *public* from acts or practices which are injurious to consumers and stated that the act was designed

> to enlist the aid of private individuals damaged by acts or practices which were forbidden in the acts, to assist in the enforcement of the laws. Such assistance is desirable only if it serves the public interest and implements the purpose of the statute.

However, in *Lightfoot*, at page 334, the court cautioned that the act was not designed to provide an additional remedy for private wrongs which do not affect the public generally:

> [A]n act or practice of which a private individual may complain must be one which also would be vulnerable to a complaint by the Attorney General under the act. A breach of a private contract affecting no one but the parties to the contract, whether that breach be negligent or intentional, is not an act or practice affecting the public interest.

Our inquiry, then, is to determine whether the advertise-

[3]"The legislature hereby declares that the purpose of this act is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition. It is the intent of the legislature that, in construing this act, the courts be guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters and that in deciding whether conduct restrains or monopolizes trade or commerce or may substantially lessen competition, determination of the relevant market or effective area of competition shall not be limited by the boundaries of the state of Washington. To this end this act shall be liberally construed that its beneficial purposes may be served.

"It is, however, the intent of the legislature that this act shall not be construed to prohibit acts or practices which are reasonable in relation to the development and preservation of business or which are not injurious to the public interest, nor shall this act be construed to repeal by implication the Fair Trade Act contained in chapter 19.89 RCW."

ment and representations by World-Wide constitute an unfair or deceptive practice and, if so, whether such conduct affects the public interest. An "unfair or deceptive practice" does not require a finding of an intent to deceive or defraud and therefore good faith on the part of the seller is immaterial. *See F.T.C. v. Algoma Lumber Co.*, 291 U.S. 67, 78 L. Ed. 655, 54 S. Ct. 315 (1934); *Koch v. F.T.C.*, 206 F.2d 311 (6th Cir. 1953). To constitute a deceptive practice, the advertisement need only have a tendency or *capacity* to deceive a substantial portion of the purchasing public. *Exposition Press, Inc. v. F.T.C.*, 295 F.2d 869, 873 (2d Cir. 1961).[4] Here, the trial court specifically found that defendant's advertisements had the *capacity* to deceive and were in fact deceptive as to the plaintiffs. This unchallenged finding is a verity. CAROA 43; *State v. Baker*, 1 Wn. App. 420, 462 P.2d 254 (1969).

The advertisements which had the capacity to deceive were placed in Field and Stream, a magazine of general circulation. These advertisements induced plaintiffs to initially contact the defendant.[5] Plaintiffs, members of the general public to whom the advertising was directed, were damaged as a result of defendant's advertisements. Consequently, we find the advertisements constitute unfair or deceptive acts or practices within the meaning of RCW 19.86.020 and the trial court erred when it concluded the act did not apply.

Reversed and remanded for further proceedings consistent with this opinion.

McINTURFF, C.J., and MUNSON, J., concur.

Petition for rehearing denied August 23, 1976.

---

[4]Under RCW 19.86.920, in construing the act the courts are to be guided by the interpretation given by the federal courts to federal statutes dealing with the same or similar matters. See footnote 3.

[5]The Consumer Protection Act includes practices "designed to induce a potential buyer to purchase goods or services." *Johnston v. Beneficial Management Corp. of America*, 85 Wn.2d 637, 643, 538 P.2d 510 (1975).