IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of<br><br>FRANK GARRETT CONDEL, IV,<br><br>               Respondent,<br><br>and<br><br>AMINA JANE CONDEL,<br><br>               Appellant. | No. 85311-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, A.C.J. — Amina Condel appeals the trial court's order that modified a parenting plan to require joint decision-making, lift restrictions on Garrett Condel's[1] residential time, and amend the domestic violence protection order to remove the children as protected parties. She contends the trial court abused its discretion by applying the incorrect legal standard and that its findings are unsupported by substantial evidence. Although the trial court misapplied RCW 26.09.191(1) by ordering joint decision-making, Amina fails to demonstrate any error as to its decision to lift restrictions on Garrett's residential time and alter provisions of the protection order. We affirm in part, reverse in part, and remand for entry of a parenting plan that complies with RCW 26.09.191(1).

---

[1] The respondent appears to uses his middle name and, in their respective briefing, both parties use that in place of his legal first name. On that basis, we also refer to the respondent as Garrett.

Further, because the parties share the same last name, we refer to them by their individual names as applicable. No disrespect is intended.

FACTS

Amina and Garrett Condel were married on January 24, 1999. They have two minor children and two adult children. On December 29, 2021, Garrett filed a petition for dissolution of the marriage in which he requested a parenting plan, child support, and an equitable division of the parties' real and personal property. The dissolution case was designated as Cause No. 21-3-06441-8 SEA. On March 9, 2022, Amina filed a response to Garrett's petition for dissolution and separately filed a petition for a domestic violence protection order (DVPO). The DVPO case was designated as King County Superior Court Cause No. 22-2-03450-5 SEA. The trial court linked the two cases, but they were not consolidated.

A commissioner granted Amina's request for a DVPO protecting her and the couple's two minor children on May 4. On June 6, the family law court considered motions for temporary orders in the dissolution case and appointed a Guardian ad Litem (GAL) to investigate and report on all issues relating to the establishment of a parenting plan, domestic violence, mental health, and any other matters that could affect the safety of the children. The next day, Garrett filed a written objection to the entry of the temporary family law orders, which included a restraining order, an order appointing GAL, and an order to surrender weapons. He also sought reconsideration of the temporary parenting plan, which was granted in part only as to child support. Garrett then appealed the DVPO entered in 22-2-03450-5 SEA.

The dissolution trial was conducted over the course of two weeks in January 2023. On April 6, the trial court issued its findings of fact and conclusions of law about a marriage and entered the final orders dissolving the marriage, establishing

the parenting plan, and setting child support. On April 17, Garrett filed a motion for reconsideration of portions of the final orders regarding spousal maintenance, GAL fees, the reconciliation payment he was ordered to make to Amina, and the residential schedule in the parenting plan. Amina responded to the motion for reconsideration on April 27 and Garrett filed his strict reply in support of his motion on May 1. Amina filed a timely notice of appeal on May 5 and designated all of the final orders in the dissolution action.

The court granted Garrett's motion for reconsideration in part on May 25 and, relevant to this appeal, amended the child support order. On June 16, Amina filed a motion to amend her notice of appeal to include the orders entered after reconsideration, which a commissioner of this court granted. Meanwhile, on July 31, this court issued its opinion in Garrett's appeal of the DVPO which affirmed that order, expressly holding that substantial evidence supported the trial court's findings with regard to Amina's claims of domestic violence.[2] However, the DVPO at issue in Garrett's appeal had been modified a week earlier, on July 24, to remove the children as protected parties after the trial court's directive to do so became effective in the April 6 orders issued pursuant to the dissolution.

ANALYSIS

I.      Joint Decision-Making

Amina first argues the court erred when it ordered joint decision-making in the parenting plan where RCW 26.09.191(1) does not provide discretion to

---

[2] *Condel v. Condel,* No. 84310-9-I (Wash. Ct. App. July 31, 2023) (*Condel* I) (unpublished), https://www.courts.wa.gov/opinions/pdf/843109.pdf, *review denied*, 2 Wn.3d 1024 (2024).

authorize this arrangement after a finding that one of the parents has a history of domestic violence.

Garrett argues that the trial court did not find that he had a history of domestic violence and any references in section 22(g) of its findings and conclusions about a marriage or section 3(a) of the parenting plan were merely acknowledgement of the earlier finding in the DVPO proceeding. Garrett is incorrect on this point; the trial court specifically *adopted* the statements in section 3 of the parenting plan as its findings. Irrespective of that fact, Garrett further avers that we should disregard the trial court's finding of domestic violence and instead focus on section 4 of the parenting plan which states,

> The court finds that the instances alleged which resulted in the order were isolated events which, while found to be domestic violence by the prior court as defined by the statute, do not demonstrate a history of domestic violence for the purposes of RCW 26.09.191.

A trial court's decision on matters affecting the welfare of children, such as parental decision-making, is ordinarily reviewed for an abuse of discretion. *In re Parenting & Support of C.A.S.*, 25 Wn. App. 2d 21, 25-26, 522 P.3d 75 (2022); *see also In re Marriage of Littlefield*, 133 Wn.2d 39, 46, 940 P.2d 1362 (1997). A decision that is manifestly unreasonable or based on untenable grounds or reasons constitutes an abuse of discretion. *In re Marriage of DeVogel*, 2 Wn. App. 2d 39, 45, 509 P.3d 832 (2022). The misinterpretation of a statute constitutes an untenable or unreasonable decision. *In re Dep. of Z.A.*, 3 Wn.3d 530, 535, 553 P.3d 1120 (2024). "But issues of statutory construction are questions of law which this court reviews de novo." *In re Marriage of Caven*, 136 Wn.2d 800, 806, 966 P.2d 1247 (1998). "In applying rules of statutory construction to the unambiguous

language of a statute, '[t]he court must give words in a statute their plain and ordinary meaning unless a contrary intent is evidenced in the statute.'" *Id*. (alteration in original) (quoting *Erection Co. v. Dep't of Lab. & Indus.,* 121 Wn.2d 513, 518, 852 P.2d 288 (1993)).

The current version of RCW 26.09.191(1), which was also in effect at the time of the trial court's final order here, provides as follows:

> The permanent parenting plan *shall not* require mutual decision-making or designation of a dispute resolution process other than court action if it is found that a parent has engaged in any of the following conduct: (a) Willful abandonment that continues for an extended period of time or substantial refusal to perform parenting functions; (b) physical, sexual, or a pattern of emotional abuse of a child; or (c) *a history of acts of domestic violence as defined in RCW 7.105.010* or an assault or sexual assault that causes grievous bodily harm or the fear of such harm or that results in a pregnancy.

(Emphasis added.) In our recent opinion, *C.A.S.*, this court explained that the word "shall" in RCW 26.09.191(1), which referenced now-repealed RCW 26.50.010(3),[3] "created a duty rather than conferring discretion." 25 Wn. App. 2d at 27. This court further held that "[o]n its face, the statute affords no discretion; it prohibits trial courts from requiring mutual decision-making or nonjudicial dispute resolution where there is a history of domestic violence." *Id*. at 27-28.

---

[3] Former RCW 26.50.010(3) (2019) defined "domestic violence" as "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, sexual assault, or stalking as defined in RCW 9A.46.110" of one intimate partner, or family or household member, by another.

This section was repealed and replaced by RCW 7.105.010, effective July 1, 2022. LAWS OF 2021, ch. 215, §§ 170, 2. RCW 7.105.010 added to the definition of domestic violence "nonconsensual sexual conduct or nonconsensual sexual penetration" and "unlawful harassment"; otherwise, the definition remains the same for the purposes of this case.

A plain and ordinary reading of the language in RCW 26.09.191(1) leads to the same conclusion: the trial court is not permitted to order mutual decision-making if it makes a finding that a parent has a history of domestic violence.

Here, the trial court expressly adopted the finding that Garrett has a history of domestic violence pursuant to the DVPO but then concluded that Amina's allegations of domestic violence do not demonstrate a history of domestic violence for the purposes of RCW 26.09.191. Specifically, section 16 of the parenting plan reads, in pertinent part, as follows:

> The Court adopts the statements in sections [sic] 3 (Reasons for putting limitations on a parent) as its findings.

> The Court makes additional findings which are contained in an order or findings of fact entered at the same time as this Parenting Plan.

Section 3 of the parenting plan, reasons for putting limitations on a parent, includes the following findings:

> Domestic Violence—Frank Garrett Condel has a history of domestic violence pursuant to King County Cause No. 22-2-03450-5 SEA.

> b. Other problems that may harm the children's best interests.
>    [X] Neither parent has any of these problems. [See Section 4].

Section 4, limitations on a parent, contains express findings that Amina was not credible in her allegations of domestic violence by Garrett. The trial court's findings contradict each other in this regard and are inconsistent with controlling authority.

Nonetheless, Garrett argues that we should follow the trial court's determination in section 4 of the parenting plan where the judge relied on RCW 26.09.191(2)(n), which grants discretion to the trial court not to apply the limitations

in RCW 26.09.191(2)(a), (b), and (m)(i) and (iv), rather than 26.09.191(1). RCW 26.09.191(2)(n) directs as follows:

> If the court expressly finds based on the evidence that contact between the parent and the child will not cause physical, sexual, or emotional abuse or harm to the child and that the probability that the parent's or other person's harmful or abusive conduct will recur is so remote that it would not be in the child's best interests to apply the limitations of (a), (b), and (m)(i) and (iv) of this subsection, or if the court expressly finds that the parent's conduct did not have an impact on the child, then the court need not apply the limitations of (a), (b), and (m)(i) and (iv) of this subsection. The weight given to the existence of a protection order issued under chapter 7.105 RCW or former chapter 26.50 RCW as to domestic violence is within the discretion of the court. This subsection shall not apply when (c), (d), (e), (f), (g), (h), (i), (j), (k), (l), and (m)(ii) of this subsection apply.

However, this court recognized and considered those distinctions in *C.A.S.* and specifically concluded that "RCW 26.09.191(1) does not provide the same discretion [as RCW 26.09.191(2)] when addressing mutual decision-making or dispute resolution" and "[t]he difference between RCW 26.09.191(1) and RCW 26.09.191(2) supports a nondiscretionary reading of RCW 26.09.191(1)." 25 Wn. App. 2d at 28. We follow our precedent and hold that the trial court erred when it authorized joint decision-making here.

II.      Residential Time

Amina next asserts the trial court erred in failing to make the express findings required in order to overcome the default restriction on parental time in RCW 26.09.191(2). She avers that the finding that Garrett has a history of domestic abuse triggered a requirement to impose mandatory restrictions on his residential time with the children. In that regard, the trial court stated the following in section 4 of the parenting plan:

> Pursuant to RCW 26.09.191(2)(n), the weight given to the existence of a protection order issued under chapter 26.50 RCW as to domestic violence is within the discretion of the court.
>
> Pursuant to the Findings of Fact and Conclusions of Law filed this same date, the court does not find Respondent, Amina Condell, credible in her allegations of domestic violence, specifically as it relates to the children. The court is cognizant of the way in which trauma and domestic violence can manifest itself in victims. Even with that consideration, the court does not find Ms. Condell's testimony credible.
>
> With respect to the Order for Protection—Domestic Violence entered [in] King County Cause No. 22-2-03450-5 SEA in which the Respondent is the victim, and the Petitioner is the restrained party, the court is not terminating the order, but modifying it as set forth in the Final Order. The court finds that the instances alleged which resulted in the order were isolated events which, while found to be domestic violence by the prior court as defined by the statute, do not demonstrate a history of domestic violence for the purposes of RCW 26.09.191.
>
> Based on the evidence, *the court expressly finds that contact between the father and his children will not cause physical, sexual, or emotional abuse or harm to the children and that the probability that the parent's or other person's harmful or abusive conduct will recur is so remote that it would not be in the children's best interests to apply limitations*.

(Emphasis added.) RCW 26.09.191(2)(a) provides that if there is a history of domestic violence, the court must impose restrictions on the aggressor's residential time. However, this restriction may be lifted if the court explicitly finds that one of the conditions under RCW 26.09.191(2)(n) is met. Amina asserts that the court abused its discretion by failing to make the express finding required in order to overcome the statute's default restriction and that its reasoning in section 4 of the parenting plan was conclusory and not supported by substantial evidence. Meanwhile, Garrett argues that the trial court found that he did not have "a history of domestic violence for the purposes of RCW 26.09.191." However, per our

analysis in part I *supra*, the trial court specifically adopted the statement in section 3 of the parenting plan as its finding.

We review the trial court's decision on a parenting plan for an abuse of discretion. *In re Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014); *In re Marriage of Littlefield*, 133 Wn.2d at 46. "'Findings of fact are reviewed under a substantial evidence standard, defined as a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true.'" *DeVogel*, 22 Wn. App. 2d at 48 (quoting *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)). "'We will not substitute our judgment for the trial court's, weigh the evidence, or adjudge witness credibility.'" *Id*. (quoting *In re Marriage of Greene*, 97 Wn. App. 708, 714, 986 P.2d 144 (1999)).

Here, despite the finding of a history of domestic violence, the court found that limitations on Garrett's residential time with the children should not be imposed because the exception provided by RCW 26.09.191(2)(n) applied in this case. Amina argues that the trial court's decision to apply RCW 26.09.191(2)(n) exceptions failed to adequately address Garrett's conduct in relation to the children under the statute and instead focused on whether she understood the impact of her own behavior on the children. Amina asserts her behavior is irrelevant to Garrett's actions and that the trial court made no specific findings about Garrett's past or future behavior towards the children, which is a central inquiry required by the statute. We disagree.

To support her claim that the trial court did not make the required finding, Amina relies on two unpublished cases, *In re Marriage of Yorks*[4] and *In re Marriage of Andersen*.[5] In *Yorks*, we addressed a situation where the trial court made no finding at all, and the respondent argued that this court "can imply or infer" the omitted findings if the record clearly demonstrates that the omitted findings were actually intended by the trial court. No. 84480-6-I, slip op. at 5. In *Andersen*, the parties disputed the extent of the domestic violence history, but the trial court did not specify which allegations it found credible and made only a conclusory finding. No. 39062-4-III, slip op. at 9-10. In contrast, the trial court's findings in this case were more detailed than in either *Yorks* or *Andersen* and provided sufficient support for its conclusion that the exception under RCW 26.09.191(2)(n) should apply.

"'We cannot add words or clauses to an unambiguous statute when the legislature has chosen not to include that language.'" *DeVogel*, 22 Wn. App. 2d at 46 (quoting *State v. Delgado*, 148 Wn.2d 723, 727, 63 P.3d 792 (2003)). RCW 26.09.191(2)(n) requires only an express finding that "based on the evidence that contact between the parent and the child will not cause physical, sexual, or emotional abuse or harm to the child and that the probability that the parent's or other person's harmful or abusive conduct will recur is so remote that it would not be in the child's best interests to apply the limitations . . . in th[e] subsection" and

---

[4] No. 84480-6-I (Wash. Ct. App. Feb. 26, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/844806.pdf.

[5] No. 39062-4-III (Wash. Ct. App. Sept. 5, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/390624_unp.pdf.

Under GR 14.1(c), we may discuss unpublished opinions as necessary for a well-reasoned opinion. *Yorks* and *Andersen* are included here only because Amina offered them as authority.

does not specify any particular evidence that must be cited in support of this determination. While Amina takes issue with the trial court's reference to her own conduct, and suggests in briefing this demonstrates that its ruling on this issue improperly rested on the court's finding as to her credibility, Amina's behavior cannot be irrelevant when the trial court's overarching goal is to determine what is in the best interests of the children. Although the court did not make a specific finding regarding Amina under RCW 26.09.191, it did find that requiring her to complete a mental health evaluation and comply with any recommended treatment was in the best interests of the children. The trial court also found Amina was not credible in her domestic violence allegations, although it acknowledged her fear of Garrett. Here, substantial evidence supports the court's finding that Amina's behavior exposed the children to conflict and potentially damaged their relationship with their father. One example of the evidence that the court relied on in reaching this determination is the numerous photographs Amina took, and introduced into evidence, which depicted the children in distress and often in states of undress. After reviewing the photographs and hearing testimony, the court found that Amina failed to recognize how taking these photographs, and the manner in which they were taken, exposed the children to conflict.

More critically, though, while those findings regarding Amina are supported by substantial evidence, review of the parenting plan as a whole establishes that they were not the basis of the court's decision not to restrict Garrett's residential time with the children. Rather, the judge explained that in considering the evidence before it, "the court expressly finds that contact between the father and his children

will not cause physical, sexual, or emotional abuse or harm to the children and that the probability that the parent's or other person's harmful or abusive conduct will recur is so remote that it would not be in the children's best interests to apply limitations." This finding is also supported by substantial evidence in the record, including, for instance, that Garrett completed a domestic violence evaluation which concluded that he was not considered to be domestically violent. The court separately found Garrett's testimony at trial, including his denials of Amina's accusations of domestic violence, to be credible. We conclude that the trial court did not abuse its discretion when it applied the exception under RCW 26.09.191(2)(n) and declined to impose restrictions on Garrett's residential time with the children, despite its finding of a history of domestic violence.

III.    Modification of DVPO

Amina next challenges the court's decision to remove the children as protected parties from the DVPO, asserting that this ruling was an abuse of discretion in light of Garrett's history of domestic violence. She further avers that the court's finding that the domestic violence occurred in the presence of the children is sufficient to establish domestic violence against them, citing this court's previous holding in the appeal from the linked DVPO case. In *Condel v. Condel*, this court upheld the DVPO entered on Amina's petition and explicitly declared that "[a] denial of the DVPO petition, or ignoring its existence when entering residential provisions, would have been a failure to consider the best interests of the children." No. 84310-9-I, slip op. at 21 (Wash. Ct. App. July 31, 2023) (*Condel* I) (unpublished), https://www.courts.wa.gov/opinions/pdf/843109.pdf, *review denied*,

2 Wn.3d 1024 (2024).[6]  Garrett vehemently argues that the court relied on the GAL's recommendation and evidence presented at trial and thus acted within its discretion when it ordered amendment of the DVPO to remove the children as protected parties.  We agree with Garrett.

On April 12, 2022, a court commissioner sua sponte linked the dissolution proceeding with the DVPO case.[7]  The order linking the cases noted that the court took this action after "having been apprised of the existence of additional cases involving the same parties," but offered no further explanation as to the commissioner's reasoning.  Two days later, Garrett filed a motion to consolidate the dissolution proceeding with the DVPO case, expressly arguing that these cases met the criteria for consolidation under CR 42(a) and that "[t]he Court's findings regarding domestic violence will have a *profound, if not a dispositive effect*, on the residential schedule and parenting arrangements which the Court must determine in the parties' dissolution proceedings."  (Emphasis added.)  Amina objected on April 21, arguing that she had separate counsel for each case and that the rules of evidence, availability of discovery, and statutory standards differ between the two distinct proceedings.  In reply, Garrett contended that denying the motion would violate his due process rights under the 14th Amendment to the United States Constitution and, if consolidated, a domestic violence finding in the DVPO case could be treated as an interlocutory order

---

[6] Pursuant to GR 14.1, we cite and discuss *Condel* I as the procedural history of that case is directly related to the issues presented in this appeal

[7] King County Local Civil Rule (LCR) 42 establishes that linking cases does not consolidate the cases, issues, or parties.  The court may order cases linked for administrative tracking and judicial efficiency.  LCR 42.

subject to review under CR 54(b).[8]  The trial court denied his motion, noting that the cases were already linked.

As a preliminary matter, Garrett asserts that this challenge to the modification of the DVPO by means of ordering language in the parenting plan is not properly before us because Amina did not specifically assign error to section 4 of the parenting plan, rendering the findings contained therein verities on appeal. However, this argument fails to recognize the entirety of the final sentence of RAP 10.3(g), which explains that the "appellate court will only review a claimed error which is included in an assignment of error *or clearly disclosed in the associated issue pertaining thereto*."  (Emphasis added.)  Amina identified her challenge sufficiently for Garrett to respond in briefing, thus she has not waived the argument.

Here, too, we apply an abuse of discretion standard.  *Chandola*, 180 Wn.2d at 642.  Further, we uphold the trial court's findings if substantial evidence in the record supports them.  *In re Marriage of Stewart,* 133 Wn. App. 545, 550, 137 P.3d 25 (2006).  "'An appellate court defers to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence and credibility of the witnesses.'"  *In re Marriage of Bundy*, 12 Wn. App. 2d 933, 938, 460 P.3d 1111 (2020) (quoting *Thompson v. Hanson,* 142 Wn. App. 53, 60, 174 P.3d 120 (2007), *aff'd*, 168 Wn.2d 738, 239 P.3d 537 (2012).  "The trial court's

---

[8] Again, *Condel* I solely considered the propriety of the DVPO proceeding; Garrett challenged a number of discretionary determinations by the trial court, evidentiary rulings, findings of fact, and the award of fees.  He further presented the constitutional challenges presented in his motion to consolidate.  This court analyzed each of his assignments of error, so his concern that these issues would evade review if the matters were not consolidated was not borne out.  *Condel* I, No. 84310-9-I (Wash. Ct. App. July 31, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/843109.pdf, *review denied*, 2 Wn.3d 1024 (2024)

findings of fact are treated as verities on appeal, so long as they are supported by substantial evidence." *Chandola*, 180 Wn.2d at 642.

The trial court's revision of the parenting plan to order removal of the children as protected parties in the DVPO is in direct conflict with the holding in the appeal of the DVPO case. This apparent inconsistency is the source of extensive litigation between the parties regarding whether *Condel* I controls the outcome of this appeal broadly, but specifically this assignment of error. While *Condel* I noted that the existence of the DVPO should not be ignored in the rulings on the residential schedule for the children, it did not direct that the children must remain protected parties. *Condel* I was not binding on the dissolution court, which retained discretion to modify residential time based on the circumstances presented *at the dissolution trial*, which necessarily included consideration of any related protection orders. RCW 26.09.191(2)(n) ("The weight given to the existence of a protection order issued under chapter 7.105 RCW or former chapter 26.50 RCW as to domestic violence is within the discretion of the court."). Additionally, DVPO hearings are "equitable in nature and may be properly determined by a court on documentary evidence alone" and the Rules of Evidence do not apply in such proceedings. *Smith v. Smith*, 1 Wn. App. 2d 122, 132, 404 P.3d 101 (2017). DVPO and dissolution proceedings are different by design as they serve separate purposes, which is, in part, why they have distinct evidentiary standards. Moreover, it is not unusual for parties to further develop evidence in support of their respective positions where, as here, the DVPO hearing is completed before the dissolution trial.

The fact that the DVPO and dissolution cases were linked administratively for tracking purposes does not mean that the findings or rulings in one must dictate the outcome in the other. KING COUNTY LOCAL COURT RULE 42. Linking the cases does not consolidate them or otherwise require that they be treated as a single proceeding. Rather, we defer to the trial court's determinations on the persuasiveness of the evidence presented at trial over the course of six days, which included testimony of the parties, four lay witnesses, one expert witness, and a report from the GAL. The GAL made specific recommendations regarding the children's physical and mental health and preferred communication method between the parents, and an explicit recommendation that the parties and their children should participate in individual weekly therapy, all of which were incorporated into the final parenting plan. There is no indication that the court's decision to modify the terms of the DVPO in the context of entry of final orders in the dissolution was manifestly unreasonable or unsupported by the record developed by the parties at trial. Furthermore, substantial evidence supports the court's finding that Garrett does not pose a risk to the children. The trial court did not abuse its discretion by ordering the amendment of the DVPO in the linked case to remove the children as protected parties.

IV. Garrett's Motion to Strike and for Sanctions

Garrett moves to strike portions of Amina's briefing and for sanctions against her and her attorneys. In order to properly analyze this motion, we first consider the extensive litigation history on this issue.

In December 2023, Amina filed her opening brief in this case and attached as appendices a copy of this court's opinion in *Condel* I, the order under review in that appeal that denied Garrett's motion to revise the commissioner's decision granting Amina's petition for a DVPO in 22-2-03450-5 SEA, and the July 24, 2023 order entered in the linked DVPO case that modified it so as to carry out the changes ordered by the judge in the dissolution case, 21-3-06441-8 SEA.

In January 2024, Garrett filed a motion requesting that this court strike Amina's opening brief and order her "to submit a Corrected Opening Brief, deleting all references and citations to the parties' DVPO proceeding, which were not presented to the trial judge in the parties' linked dissolution proceeding." (Boldface omitted.) Garrett asserted that "throughout her Opening Brief, [Amina] repeatedly refers and alludes to pleadings and rulings from the DVPO proceedings which were never presented to the trial judge in the dissolution proceedings," and "any citations to Clerk's Papers from the DVPO proceedings, . . . as well as any reference to any other rulings from the DVPO proceeding, like the Court of Appeals' decision in that case, which were not duly admitted in the dissolution proceedings, . . . must be stricken." (Boldface omitted.)

Amina filed written opposition to Garrett's motion to strike. She responded that the dissolution court itself cited to and discussed the DVPO proceeding, 22-2-03450-5 SEA, and this court should "deny any suggested request to strike discussion of rulings from the DVPO proceeding, which were attached to [her] Opening brief in an appendix." Amina further asserted that the order that modified the DVPO to conform to the dissolution court's final orders was properly appended

because it "was a direct consequence of final orders entered in this marriage dissolution proceeding." She noted that the RAPs are interpreted "to promote justice and facilitate the decision of cases on the merits," RAP 1.2(a), and argued that "there is significant overlap on the merits between the two linked cases. And while neither is binding on the other, it would not be practical, just, or efficient to ignore rulings or findings in the DVPO proceeding."

In reply, Garrett argued Amina "is not entitled to assert that this Court should review the issues presented here based on 'pleadings, orders, and other papers' filed in the DVPO proceedings, or include them in the Appendix to her Opening Brief, if those 'pleadings, orders, and other papers' were not presented to the trial judge in this proceeding." (Emphasis omitted.) Garrett argued that because this court does not make findings and its review in this proceeding "must be based solely on the evidence presented to the [dissolution] court," his motion to strike should be granted and Amina "should be ordered to submit a corrected Opening Brief which deletes all references to the linked DVPO proceedings, unless there is a corresponding citation to the Report of Proceedings, showing that those references were presented first to the trial judge in this dissolution proceeding." (Emphasis omitted.)

On February 2, after hearing oral argument from the parties, a commissioner of this court denied Garrett's motion to strike and noted that he could renew his arguments on this issue in his briefing to the panel. Garrett moved to modify the commissioner's ruling and asserted that Amina's opening brief "is replete with references to this Court's unpublished opinion and other matters from the DVPO proceeding that were never presented to the trial judge in this dissolution

proceeding." (Emphasis omitted.) On March 31, 2024, a panel of judges denied Garrett's motion to modify the commissioner's ruling.

On July 25, Garrett filed a separate motion to strike footnote 3 in Amina's reply brief and to impose sanctions against Amina and her attorneys pursuant to RAP 18.9(a). In this motion, he repeats the assertions in his brief and previous motion, and further contends that Amina's "argument on appeal is based on a lie; namely, that the trial court in this dissolution proceeding found that [Garrett] had engaged in a history of domestic violence. Yet, the trial court in this dissolution proceeding did **not** find that Garrett had a 'history of domestic violence.'" (Boldface in original.) On August 6, Amina filed her 13-page answer to that motion to strike and claimed that Garrett incorrectly assumed that a single footnote is being offered as evidence in support of her substantive argument. She also asserted that motions to strike waste the court's and parties' time and explained that her reference to the DVPO proceedings provides additional context to the issues on appeal. Garrett filed his strict reply in support of his motion to strike the following day and reiterated the same arguments he made in his motion to strike and further averred that Amina was attempting to prejudice this court by referring to matters from the DVPO proceedings.

The Court of Appeals "'does not accept evidence on appeal that was not before the trial court.'" *Morgan v. Briney*, 200 Wn. App. 380, 394, 403 P.3d 86 (2017) (quoting *State v. Curtiss*, 161 Wn. App. 673, 703, 250 P.3d 496 (2011)). Additionally, "[t]his court will not consider matters not in the appellate record." *Smith v. Smith*, 13 Wn. App. 381, 385, 534 P.2d 1033 (1975). We decide cases based

only on the issues raised in the parties' briefs. RAP 12.1. Most critically, as noted by the commissioner in denying Garrett's first motion to strike, this court is more than capable of disregarding evidence that has not been properly submitted for our review.

At oral argument before this court, Garrett's counsel asserted that *M.G. v. Yakima School District No. 7*, 2 Wn.3d 786, 803, 544 P.3d 460 (2024) requires striking the offending footnote in Amina's reply brief.[9] However, a careful review of *M.G.* establishes that it contains no such holding and is inapplicable to this appeal because, there, the Supreme Court struck portions of the District's response to amici curiae for referencing facts not supported by the record. *Id*. at 803. In doing so, the court explained that the basis of the motion to strike, RAP 10.3(a)(5), does not apply to answers to amici because they are not merits briefs, and then simply set out the reasoning for its ruling granting the motion nonetheless. *Id*. at 803-04. Here, Garrett moved to strike a footnote in Amina's brief that noted the current status of the DVPO that had been modified to comport with the trial court's final parenting plan.

Beyond offering authority that is inapposite and without a holding on the question presented here, Garrett's motion is premised on a fatal misunderstanding of the trial court's findings. While he asserts Amina's appeal is "based on a lie" that the trial court found Garrett had a history of domestic violence, as detailed herein,

_____

[9] When asked about the benefit of ruling on repeated motions to strike, the briefing of which necessarily emphasizes the very information the proponent seeks to excise from the proceedings, as opposed to simply relying on controlling case law that presumes the court disregards any information not properly before it, Garrett's attorney responded "because the Supreme Court in *M.G.* . . . says you have to strike it. If it's not part of the court record, it shouldn't be considered and it should be stricken." Wash. Ct. of Appeals oral arg., *In re Marriage of Condel*, No. 85311-2-I (Sept. 24, 2024) (*Condell* II), at 15 min., 45 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2024091260/.

that is precisely the finding that was entered. More critically, the authority relied upon by the Division One commissioner in the denial of Garrett's earlier motion to strike, footnote 2 in *Engstrom v. Goodman*, states in relevant part that

> a motion to strike is typically not necessary to point out the evidence and issues a litigant believes this court should not consider. No one at the Court of Appeals goes through the record or the brief with a stamp or scissors to prevent the judges who are hearing the case from seeing material deemed irrelevant or prejudicial.

166 Wn. App. 905, 909 n.2, 271 P.3d 905 (2012). This statement remains true. Garrett's motion to strike and for sanctions is denied.

## V.    Attorney Fees and Sanctions

Both Amina and Garrett request attorney fees on appeal and devote a portion of their briefs to their requests, along with citation to relevant authority. Amina requests fees under RCW 26.09.140, RCW 7.105(1)(j) [sic],[10] and RAP 18.1. Garrett requests fees under RAP 18.1(a) and as a sanction pursuant to RAP 18.9(a), asserting Amina's appeal is frivolous and that her counsel should separately be sanctioned for violating their duties under RAP 18.7 and CR 11. Amina asserts that Garrett's repeated motions have made the proceedings costlier than need be and constitute intransigence.

RAP 18.1 allows for the recovery of attorney fees on appeal and sets out the requirements for such a request, including that the party seeking fees must devote a portion of their opening brief to the request and provide the basis and supporting argument. In conjunction with RAP 18.1, this court has authority to award attorney

---

[10] We assume that Amina intended to offer RCW 7.105.310(1)(j), and that the missing section number was simply a typographical error, and analyze her fee request under that subsection of the statute.

fees where authorized by statute, agreement, or equitable grounds. *In re Marriage of Greenlee*, 65 Wn. App. 703, 707, 829 P.2d 1120 (1992). Under RCW 26.09.140, this court may "order a party to pay for the cost to the other party of maintaining the appeal." Under RAP 18.9, this court may order a party to pay compensatory damages or sanctions for filing a frivolous appeal. *In re Custody of S.A.-M.*, 17 Wn. App. 2d 939, 955, 489 P.3d 259 (2021), *review denied,* 198 Wn.2d 1021, *cert. denied*, 142 S. Ct. 1232 (2022). "An appeal is frivolous when it presents 'no debatable issues upon which reasonable minds could differ,' and is lacking in merit 'that there [is] no reasonable possibility of reversal.'" *Id*. (alteration in original) (quoting *Mahoney v. Shinpoch*, 107 Wn.2d 679, 691, 732 P.2d 510 (1987)). When a request is premised upon a claim of intransigence, the party seeking fees bears the burden to demonstrate "the other party acted in a way that made trial more difficult and increased legal costs, like repeatedly filing unnecessary motions or forcing court hearings for matters that should have been handled without litigation." *In re Marriage of Pennamen*, 135 Wn. App. 790, 807, 146 P.3d 466 (2006).

As an alternative basis for attorney fees, Amina incorrectly relies on RCW 7.105.310(1)(j), which provides the court broad discretion to grant relief in protection orders, but not in dissolution proceedings. In support of this aspect of her request, she cites to *Barber v. Barber*, 136 Wn. App. 512, 517, 150 P.3d 124 (2007) and *In re Parentage of T.W.J.*, 193 Wn. App. 1, 10, 367 P.3d 607 (2016). However, both of those cases were appeals from orders granting a DVPO, not dissolution proceedings, and do not control here.

The trial court found Amina has limited income and ordered Garrett to pay spousal support, in addition to child support and 55 percent of other expenses for the children, in order to equalize the households upon dissolution of the marriage. Further, the appeals in this matter and the DVPO case demonstrate the highly contentious nature of this dissolution and the ongoing conflict between the parties. Garrett argued that this court should hold Amina and her attorneys "jointly and severally liable" for attorney fees as a sanction for filing a frivolous appeal and asked for sanctions six separate times throughout his motions and briefing. While Amina does not prevail on all of her assigned errors, her appeal is not so lacking in merit "'that there [is] no reasonable possibility of reversal.'" *S.A.-M.*, 17 Wn. App. 2d at 955 (quoting *Mahoney,* 107 Wn.2d at 691). Accordingly, her appeal is not frivolous and we deny Garrett's request for sanctions. Amina's request for fees based on intransigence fails because it presented for the first time in her reply brief, despite the fact that RAP 18.1 specifies that a party seeking fees "must devote a section of [their] *opening* brief to the request." (Emphasis added.) We decline to award fees to either party.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

WE CONCUR: